UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
OCT 03 2007
WAYNE R. ANDERSEN
U. S. DISTRICT COURT JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 364-14 |
| vs. | ) | Judge Wayne R. Andersen |
| | ) | |
| FRED CHANEY | ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant FRED CHANEY, and his attorney, DONNA MAKOWSKI, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with conspiracy to commit marriage fraud, in violation of Title 18, United States Code, Section 371 (Count One); and marriage fraud, in violation of Title 8, United States Code, Section 1325(c) and Title 18, United States Code, Section 2 (Count Fifteen).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment. Count One charges defendant with conspiring to commit marriage fraud, in violation of Title 18, United States Code, Section 371.

### Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than September 2002, and continuing through in or about June 2007 (the "Relevant Time Period"), at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, Fred Chaney did knowingly conspire with others, including coconspirators Jeremy Starnes, Tammy Daniels, Brooke Thompson, Tina Chaney, Cari Arrieta, Bridgette Thompson, Linda Laskowski, and Amy Dupree, to commit certain offenses against the United States, namely, to knowingly enter into marriages for the purpose of evading provisions of the immigration laws, namely Title 8, United States Code, Sections 1154 and 1186a, which provisions restrict the availability of legal permanent resident status, applied for on the basis of marriage to a United States citizen to those foreign nationals who have entered into the marriage in good faith, not in exchange for something of value and not for the purpose of procuring the foreign national's admission as an immigrant, and to aid and abet the commission of said offenses, in violation of Title 8, United States Code, Section

1325(c) and Title 18, United States Code, Section 2, in violation of Title 18, United States Code, Section 371.

Specifically, in or about September 2002, Starnes informed Fred Chaney that he could earn $5,000 by entering into a marriage with a foreign national, the purpose of which was to obtain an immigration benefit for the foreign national. Starnes further informed Fred Chaney that he would receive the $5,000 in the following increments: (a) $1,000 on the day of the marriage; (b) $2,000 after a marriage interview with immigration officials; and (c) $2,000 after the foreign national received her permanent resident card. Fred Chaney agreed to enter into such a marriage. At the time Fred Chaney agreed to enter into the fraudulent marriage, he knew that his niece, Tina Chaney, had already married a foreign national in return for money and that Starnes had arranged the marriage. Tina Chaney had introduced Fred Chaney to Starnes.

Starnes then set up a meeting between Fred Chaney and co-defendant Ewa Jelen, a foreign national, at a restaurant in Chicago, Illinois. The meeting was attended by Fred Chaney, Jelen, Starnes, Laskowski – who at the time was Fred Chaney's girlfriend – and an unknown female who was friends with Jelen. During the meeting, Fred Chaney introduced Laskowski as his girlfriend. Further, during the meeting, Starnes explained that Fred Chaney would receive $5,000 for marrying Jelen. During the meeting, Starnes explained to Fred Chaney and Jelen various things they should to do to make their marriage look real, such as

taking pictures together. Starnes also told them what types of questions immigration officials might ask during an immigration interview that would take place in the future.

On or about February 10, 2003, Fred Chaney and Jelen participated in a civil marriage ceremony that took place in Chicago, Illinois. At the time, Fred Chaney had no relationship with Jelen other than the financial relationship that had been discussed during the meeting with Starnes and Jelen at the restaurant in Chicago. Further, the purpose of the marriage was to gain an immigration benefit for Jelen and $5,000 for Fred Chaney. Following the marriage ceremony, Starnes handed Chaney an envelope containing $1,000 cash. While a wedding reception was set up after the marriage ceremony for the purpose of making the marriage appear legitimate, Fred Chaney was not aware of the reception and did not attend.

In a conversation between Jelen and Fred Chaney after the marriage ceremony, Jelen told him that she had agreed to pay a total of $10,000 to enter into the marriage with him. Jelen told Fred Chaney that $5,000 went directly to Starnes and that she was required to pay $5,000 to Fred Chaney. On various occasions after Fred Chaney and Jelen's marriage ceremony, Jelen provided Fred Chaney with cash payments that she deducted from the total amount she owed him for entering into the marriage.

After Fred Chaney and Jelen's marriage ceremony, Fred Chaney met Jelen at an attorney's office where they completed immigration paperwork seeking to adjust Jelen's immigration status based on the fraudulent marriage. Because Fred Chaney did not have the financial means to support Jelen, in furtherance of the conspiracy, Fred Chaney had his

girlfriend, Laskowski, complete an "Affidavit of Support Under Section 213A of the Act," in which Laskowski agreed to provide financial support for Jelen, if needed. Additionally, in furtherance of the conspiracy, Fred Chaney had Laskowski attend a Cubs game with Jelen, Jelen's children and him in order to take photos to show to immigration officials.

On or about December 8, 2005, Fred Chaney and Jelen attended an immigration interview conducted by United States Citizenship and Immigration Services. Prior to the interview, Fred Chaney spoke with his sister Tammy Daniels about what to expect at the interview. Fred Chaney knew that Daniels had also entered into a fraudulent marriage arranged by Starnes and had already attended an immigration interview. Daniels informed Fred Chaney about the types of questions that he might be asked during the interview.

During the immigration interview, Jelen and Fred Chaney falsely held themselves out as being a couple that had entered into a legitimate marriage, well knowing that their statements were false. As described above, their marriage was a sham and was entered into so Fred Chaney could profit and Jelen could receive an immigration benefit.

Fred Chaney also assisted coconspirators Tammy Daniels, Linda Laskowski and Amy Dupree with their fraudulent marriages, each of which was arranged by Starnes. Specifically, Fred Chaney drove Daniels to obtain her marriage certificate, well knowing that Daniels intended to get married to a foreign national in return for money. Similarly, Fred Chaney drove Laskowski to and attended Laskowski's marriage ceremony in which she married a foreign national in return for money.

Finally, Fred Chaney accompanied Dupree on her first meeting with the foreign national Starnes had arranged for Dupree to marry. During the meeting, Fred Chaney met Laurentiu Gavra, the person Dupree would later marry in order to obtain an immigration benefit for Gavra and money for Dupree.

### Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

6

a. **Applicable Guidelines.** The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2006 Guideline Manual.

b. **Offense Level Calculations.**

i. The base offense level for the charge in Count One of the indictment is 11, pursuant to Guideline § 2L2.1(a);

ii. There should be no adjustment of defendant's offense level for his role in the offense.

iii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero, and defendant's criminal history category is I.

   d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 9, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 4 to 10 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

   e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

   f. Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines.

The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

10. The government agrees to recommend that sentence be imposed within the applicable guidelines range and to make no further recommendation concerning at what point within the range sentence should be imposed.

11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

13. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to this defendant.

## Presentence Investigation Report/Post-Sentence Supervision

14. Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

15. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

16. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns

(together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

17. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 364.

18. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree

unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

   vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the legality of the sentence imposed.

13

Defendant understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

20. By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. § 3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

## Other Terms

21. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

22. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

23. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term

of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

24. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

25. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

26. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 10/3/07

_____  
PATRICK J. FITZGERALD  
United States Attorney

_____  
SCOTT R. DRURY  
Assistant U.S. Attorney

_____  
FRED CHANEY  
Defendant

_____  
DONNA MAKOWSKI  
Attorney for Defendant

16